ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| JEAN PAUL LE DU<br>Peticionario<br><br>v.<br><br>JENNIELENA RUBINO<br>Recurrido | KLCE202400797 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aguadilla<br><br>Caso Número:<br>AG2024RF00329<br><br>Sobre:<br>Divorcio-Ruptura Irreparable |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de agosto de 2024.

Comparece Jean Paul Le Du (peticionario) y nos solicita la revocación de una *Resolución*[1] en la que, el Tribunal de Primera Instancia, Sala de Aguadilla (TPI o foro primario) no autorizó la entrega de ciertas grabaciones a la trabajadora social de la Unidad Social de Relaciones de Familia y Asuntos de Menores, asignada a la investigación relacionada a la petición de custodia monoparental, pendiente en este caso.

Por los fundamentos que exponemos a continuación, denegamos la expedición del auto de *certiorari*. Veamos.

## I.

El peticionario y Jennielena Rubino (recurrida) contrajeron matrimonio el 25 de mayo de 2013 y procrearon dos hijas, quienes a la fecha son menores de edad. Con el interés de lograr la disolución del vínculo matrimonial existente entre las partes, el peticionario incoó una demanda de divorcio por la causal de ruptura irreparable,

---

[1] Véase Apéndice pág. 1, *Resolución* emitida y notificada en autos el 17 de junio de 2024.

Número Identificador:

RES2024_____

el 15 de mayo de 2024. Ese mismo día, el peticionario presentó una petición de custodia monoparental ante el TPI, en la que expuso que, la madre de los menores incurre en un patrón de maltrato y violencia que afecta emocionalmente a las niñas, así como actos que, a su entender, constituyen enajenación parental. A esos efectos, suplicó al foro primario que, celebrara una vista para dilucidar la custodia provisional, en lo que culmina la investigación realizada por la Unidad Social de la Oficina de Relaciones de Familia. Lo antes, fue reiterado mediante otra moción interpuesta el 21 de mayo de 2024.[2]

Así las cosas, mediante una *Moción informativa y en solicitud de orden*, el peticionario informó que, durante su entrevista con la trabajadora social asignada al caso, ésta no aceptó ciertas grabaciones de audio hechas por él, las cuales presuntamente evidencian patrones de maltrato de la recurrida hacia sus hijas. En su consecuencia, peticionó al foro primario que autorizara a la trabajadora social a escuchar y así tomar en consideración el contenido de estas en su informe. Arguyó que, en casos que se invoca el derecho de familia dentro de la figura del poder de *parens patria* del Estado, procedía su solicitud, porque el derecho de intimidad opera en contra del Estado, en las investigaciones criminales y no en casos civiles entre partes privadas. A lo antes, añadió su postura sobre el deber del TPI de auscultar prueba sobre la enajenación parental.[3] La recurrida se opuso, por entender que, las grabaciones fueron realizadas sin su consentimiento ni conocimiento, por lo que resultan ilegales y contrario a derecho. Arguyó que, las alegadas grabaciones no constituyen prueba ante la trabajadora social, quien no tiene facultad en ley para aquilatar

---

[2] Véase, Entrada 14 en SUMAC. Mediante *Orden* emitida el 23 de mayo de 2024 el TPI refirió el asunto a la Unidad Social de Relaciones de Familia y Asuntos de Menores para recomendaciones provisionales de custodia.
[3] Apéndice, págs. 14-16.

prueba y adjudicar actos que pueden constituir o no violencia doméstica.[4]

Evaluado lo antes, el TPI denegó la solicitud interpuesta, por lo que, inconforme, el peticionario acude ante esta Curia y señala que "erró el TPI al no autorizar a la TS Arroyo a recibir las grabaciones en posesión de la parte demandante."

Por su parte, la recurrida acreditó su oposición a la expedición del auto de *certiorari* el 2 de agosto de 2024. En su comparecencia, informa que, en el pleito de divorcio acreditó su contestación a la demanda e incoó una reconvención en la que también solicitó la custodia monoparental de sus hijas. Expuso que, por incidencias de violencia doméstica acaecidas el 7 de junio de 2024, el padre de las menores fue arrestado y el TPI, Sala Municipal de Mayagüez, expidió una *Orden de Protección Ex Parte* a favor de la recurrida, al amparo de la Ley 54 de 15 de agosto de 1989, según enmendada (Ley 54), *Ley para la Prevención e Intervención con la Violencia Doméstica.* Además, la referida orden fue enmendada el 11 de junio de 2024. En esta, el TPI concedió la custodia provisional de las dos menores a la demandada-recurrida y suspendió las relaciones paternofiliales. Nos relata que, el 29 de julio de 2024, se celebró la vista de divorcio y el TPI emitió su dictamen en la que declaró roto y disuelto el vínculo matrimonial. Como parte del pronunciamiento judicial, se concedió la patria potestad compartida de las menores a las partes y la custodia provisional a la madre, manteniendo suspendidas las relaciones paternofiliales. Además, dispuso sobre la pensión provisional y el hogar seguro, entre otros asuntos provisionales. En cuanto a las grabaciones, arguye que, no fueron conocidas ni consentidas por la demandada. Aclara que, no conocía de las mismas hasta que se inició el proceso de divorcio y presentó su

---

[4] Apéndice, pág. 17.

solicitud de orden de protección al amparo de la Ley 54, *supra.* Explica que, las grabaciones fueron tomadas en la intimidad de su hogar. Cualifica dicho acto como uno que viola tanto su derecho a la intimidad consagrado en el Articulo II, Sección 8 de la Carta de Derechos de la Constitución de Puerto Rico, así como uno que, constituye un delito menos grave estatuido en el Código Penal (33 LPRA 5235).[5] Destaca que, las grabaciones no pueden ser utilizadas en su contra para probar alegaciones del peticionario ante una trabajadora social que no tiene facultad en ley para dirimir planteamientos de autenticidad, admisibilidad y derechos constitucionales envueltos. De igual forma, sostuvo que, para probar la veracidad de hechos mediante grabaciones, las mismas están sujetas a nuestras reglas evidenciarias. Reitera que, el peticionario tiene derecho a informar y presentar prueba sobre sus alegaciones, pero no en menoscabo de los derechos constitucionales de la recurrida con actos contrario a la ley. Por último, señala que, el peticionario pretende que el foro primario claudique los derechos constitucionales de la recurrida bajo el palio del poder de *parens patria* cuando existen otras formas de garantizar que el foro judicial tenga acceso a la información que interesa presentar en su caso.

Con el beneficio de la comparecencia de las partes, resolvemos.

**II.**

**A. *Certiorari***

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera et*

---

[5] Sec. 5235 **Grabación de comunicaciones por un participante**
Toda persona que participa en una comunicación privada personal bien sea comunicación telemática o por cualquier otro medio de comunicación, que grabe dicha comunicación por cualquier medio mecánico o de otro modo, sin el consentimiento expreso de todas las partes que intervengan en dicha comunicación, incurrirá en delito menos grave. Julio 30, 2012, Núm. 146, art.169, ef. Septiembre 1, 2012.

*al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera et al. v. Arcos Dorados et al.*, supra. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* supra.

Por su parte, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1*,* limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Caribbean Orthopedics v. Medshape, et al.,* 207 DPR 994 (2021). Esa regla establece que el recurso de *certiorari* solo se expedirá "cuando se recurra de una orden o resolución al amparo de las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. Sin embargo, por excepción, el foro apelativo intermedio podrá revisar -en lo pertinente- una orden o resolución interlocutoria dictada por el tribunal de instancia cuando se recurra de la determinación en un caso de relaciones de familia, entre otros." (Nota omitida.) *Torres González v. Zaragoza Meléndez,* supra.

No obstante, la citada Regla 52.1, también dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, **en casos de relaciones de familia**, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable a la justicia. *Íd.* El delimitar la revisión a instancias específicas tiene como propósito evitar las "dilaciones innecesarias,

el fraccionamiento de causas y las intervenciones a destiempo." *Íd.*; Véase, además, *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478, 486-487 (2019).

Por otro lado, el examen que hace este Tribunal previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez,* supra. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari*. La citada Regla dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> **(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.**
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio, no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida como la etapa del procedimiento en la cual fue presentada. Lo anterior, a los fines

de determinar si es la más apropiada para intervenir sin ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97 (2008).

Es norma reiterada que, el foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen que emitió el foro de instancia es arbitrario o constituye un exceso de discreción. *Banco Popular de Puerto Rico v. Gómez Alayón y otros,* 2023 TSPR 145, resuelto el 19 de diciembre de 2023.

**III.**

En síntesis, el peticionario solicita que ejerzamos nuestra función discrecional, para intervenir con la determinación del foro primario de no autorizar la entrega de ciertas grabaciones a la trabajadora social asignada a investigar y emitir recomendaciones sobre la petición de custodia pendiente ante el foro primario.  Si bien es cierto que, el caso de autos trata sobre asuntos de relaciones de familia, contemplados en la Regla 52.1 de Procedimiento Civil, *supra*, tras evaluar el recurso de epígrafe, al amparo de los criterios para la expedición del auto de *certiorari* de la Regla 40 del Reglamento de este Tribunal, *supra,* concluimos que el mismo no presenta un asunto que justifique nuestra intervención <u>en esta etapa de los procedimientos</u>. De un examen del expediente colegimos que, el foro primario tiene a su haber, dentro de su sana discreción, el manejo de la prueba a presentarse que, dentro de un debido proceso de ley, en su día estime necesaria y pertinente para dilucidar las controversias pendientes ante su consideración, conforme a derecho.

 De nuestro examen sosegado sobre el recurso instado, observamos que, no surge que el foro primario, en esta etapa temprana, de este proceso tan delicado, de adjudicar la procedencia de una custodia monoparental, peticionada por ambas partes, haya

determinado, no considerar la totalidad de la prueba que, en su día puedan presentar el peticionario así como la recurrida. La inclusión o falta de inclusión en el informe de la trabajadora social sobre el contenido de unas grabaciones de audio, tomadas presuntamente sin el consentimiento ni conocimiento de la recurrida, no impide que -dentro de un debido proceso de ley- el peticionario presente la prueba que estime pertinente ante la consideración del tribunal, en aras de fundamentar sus alegaciones en este caso. A esos efectos, es importante señalar que, como se sabe, el artículo 8 de la *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia*, (Ley Núm. 223 de 21 de noviembre de 2011, según enmendada por la Ley Núm. 70 de 19 de julio de 2020), establece que, el informe de la trabajadora social no es el único factor para considerar por el tribunal en casos como el de marras.[6]

Debemos resaltar que, resulta evidente del expediente que, no se ha concluido el descubrimiento de prueba y no albergamos duda que el foro primario habrá de garantizar el mayor acceso a la información dentro del debido proceso de ley necesario para ejercer su sana discreción judicial al justipreciar la mayor prueba admisible y confiable. Lo antes, en aras de determinar la custodia final protegiendo los mejores intereses y el bienestar de las menores a la luz de todas las circunstancias existentes, sin violentar los derechos de cada parte. En su consecuencia, colegimos que, de nuestro análisis del dictamen recurrido, no surge algún pronunciamiento del foro primario que impida que la presentación de prueba, dentro de

---

[6] **Sec. 3186 Recomendación de custodia del trabajador social y la determinación del tribunal**
La recomendación sobre custodia del trabajador social, así como la determinación sobre custodia del tribunal tendrán como propósito garantizar el mejor bienestar del menor. [...] **Las recomendaciones sobre custodia que emitan los trabajadores sociales, será uno de los factores a considerar por el tribunal para hacer la determinación, pero no será el único**. El tribunal emitirá la correspondiente determinación de custodia tomando en consideración lo dispuesto en este capítulo. No obstante, lo anterior, el tribunal siempre tendrá discreción judicial para la determinación y adjudicación de custodia, protegiendo siempre los mejores intereses y el bienestar de los menores a la luz de la todas las circunstancias existentes. Noviembre 21, 2011, Núm. 223, Art.8.

un debido proceso de ley que propicie la búsqueda de la verdad, en el mejor interés y bienestar de las menores en este caso, conforme a derecho. Por ello, y desde dicha perspectiva, en esta etapa de los procesos, nada nos sugiere que, en el ejercicio de sus facultades, el foro recurrido, haya incurrido en error o en abuso de la discreción.

Por tal razón, nos abstendremos de intervenir en el manejo del caso y el descubrimiento de prueba que realiza el foro *a quo*, en esta etapa temprana del caso. En ausencia de tales fundamentos, procede denegar la expedición del auto de *certiorari*. Lo antes no prejuzga los posibles asuntos y/o señalamientos que las partes interesen presentar en una etapa posterior, dentro de un debido proceso de ley.

**IV.**

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones